UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ADVANCE MAGAZINE PUBLISHERS INC.
d/b/a CONDÉ NAST,

    Plaintiff,

             Case No. _____

v.            JURY TRIAL DEMANDED

ZHEJIANG XIBIN IMPORT AND EXPORT
CO., LTD., XIMIVOGUE USA
FRANCHISING, LLC, XIMI VOGUE
FLORIDA, LLC, XIMIVOGUE BAL
HARBOUR LLC, XIMIVOGUE BAYSIDE
LLC, XIMIVOGUE PEMBROKE LLC,
XIMIVOGUE WESTLAND LLC, XIMI
VOGUE PLAZA DEL SOL, LLC,
XIMIVOGUE LLC, ALEJANDRO
GUERRERO, STEPHENIA LIMA,
SHAHPOUR DALIRIAN, YANET
BARKLEY, XIMI VOGUE FLORIDA
BROWARD LLC, XIMI FLORIDA 001 LLC,
XIMI FLORIDA 002 LLC, XIMI FLORIDA
003 LLC, XIMI FLORIDA 004 LLC, XIMI
FLORIDA 005 LLC, XIMI VOGUE, INC.,
XIMI CALIFORNIA 001 LLC, KKCUTE INC.
(FORMERLY d/b/a XIMIVOGUE CHICAGO
INC.), and XIMIVOGUE NORTH
CAROLINA, LLC,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

   Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast ("**Condé Nast**" or

"**Plaintiff**"), through its undersigned counsel, hereby files this complaint against Defendants

Zhejiang Xibin Import and Export Co., Ltd., XIMIVOGUE USA Franchising, LLC, XIMI

VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC,

XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol,

LLC, XIMIVOGUE LLC, Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, Yanet Barkley, XIMI VOGUE Florida Broward LLC, XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, XIMI VOGUE, Inc., XIMI California 001 LLC, KKCUTE Inc. (formerly d/b/a XIMIVOGUE Chicago Inc.), and XIMIVOGUE North Carolina, LLC (collectively, "**Defendants**") and in support thereof, states as follows:

## THE PARTIES

1.      Condé Nast is an unincorporated division of Advance Magazine Publishers Inc., which is a corporation organized and existing under the laws of the State of New York, with an address of One World Trade Center, New York, New York 10007.

2.      Defendant Zhejiang Xibin Import and Export Co., Ltd. is a Chinese limited company, with an address at No.127, Chunhan Road Beiyuan Street, Yiwu City, Zhejiang Province, China 322001.

3.      Defendant XIMIVOGUE USA Franchising, LLC is a limited liability organized and existing under the laws of the State of Florida, with its principal place of business at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  On information and belief, XIMIVOGUE USA Franchising, LLC's managers are Alejandro Guerrero, Stephenia Lima, and Shahpour Dalirian, each of whom are residents of the State of Florida, and Yanet Barkley, who is a resident of the State of Texas.

4.      Defendant XIMI VOGUE Florida, LLC is a limited liability organized and existing under the laws of the State of Florida, with its principal place of business at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  On information and belief, XIMI VOGUE Florida,

LLC's managers are Alejandro Guerrero and Shahpour Dalirian, both of whom are residents of the State of Florida.

5.      Defendant XIMIVOGUE Bal Harbour LLC is a limited liability organized under the laws of the State of Florida, with its principal place of business at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  According to the records of Florida's Division of Corporations XIMIVOGUE Bal Harbour LLC was administratively dissolved on September 25, 2020.  On information and belief, XIMIVOGUE Bal Harbour LLC continues to conduct business notwithstanding its administrative dissolution. On information and belief, XIMIVOGUE Bal Harbour LLC's managers are Alejandro Guerrero, Stephenia Lima, and Shahpour Dalirian, each of whom are residents of the State of Florida.

6.      Defendant XIMIVOGUE Bayside LLC is a limited liability organized and existing under the laws of the State of Florida, with its principal place of business at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  On information and belief, XIMIVOGUE Bayside LLC's managers are Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, and Carolina Silva, each of whom are residents of the State of Florida.

7.      Defendant XIMIVOGUE Pembroke LLC is a limited liability organized and existing under the laws of the State of Florida, with its principal place of business at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  On information and belief, XIMIVOGUE Pembroke LLC's managers are Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, and Carolina Silva, each of whom are residents of the State of Florida.

8.      Defendant XIMIVOGUE Westland LLC is a limited liability organized and existing under the laws of the State of Florida, with its principal place of business at 1675 W

49th St., 1316, Hialeah, Florida 33012.  On information and belief, XIMIVOGUE Westland

LLC's manager is Defendant XIMI VOGUE Florida LLC, a resident of the State of Florida.

9.      Defendant XIMI VOGUE Plaza Del Sol, LLC is a limited liability organized and

existing under the laws of Puerto Rico, with its designated street address at Centro de

Emprendimiento, Ave Chardon 159, San Juan, Puerto Rico 00918 and designated mailing

address at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  On information and belief,

XIMI VOGUE Plaza Del Sol, LLC's president and vice president are Defendant Alejandro

Guerrero and Stephenia Lima, respectively, both of whom are residents of the State of Florida.

10.     Defendant XIMIVOGUE LLC is a limited liability organized and existing under

the laws of the State of Florida, with its principal place of business at 11401 NW 12th St, Unit

288, Miami, Florida 33172.  On information and belief, XIMIVOGUE LLC's managers are

Alejandro Guerrero, Stephenia Lima, and Shahpour Dalirian, each of whom are residents of the

State of Florida.

11.     On information and belief, Defendant Alejandro Guerrero is a resident of the

State of Florida with a residence located at 10228 NW 72nd St, Doral, Florida 33178.

12.     On information and belief, Defendant Stephenia Lima is a resident of the State of

Florida with a residence located at 3580 NW 85th Court, Apartment 148, Miami, Florida 33122.

13.     On information and belief, Defendant Shahpour Dalirian is a resident of the State

of Florida.

14.     On information and belief, Defendant Yanet Barkley is a resident of the State of

Texas with a residence located at 10703 Elmdale Dr, Houston, Texas 77070.

15.     Defendant XIMI VOGUE Florida Broward LLC is a limited liability organized

and existing under the laws of the State of Florida, with its principal place of business at 9630

NW 2nd St, 108, Pembroke Pines, Florida 33024.  On information and belief, VOGUE Florida Broward LLC's managers are Nahir F. Vargas and Rafael Maita, both of whom are residents of the State of Florida.

16.     Defendant XIMI FLORIDA 001 LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2742 Biscayne Boulevard, Miami, Florida 33137.  On information and belief, XIMI FLORIDA 001 LLC's manager is George Matz, a resident of the State of Florida.

17.     Defendant XIMI FLORIDA 002 LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2742 Biscayne Boulevard, Miami, Florida 33137.  On information and belief, XIMI FLORIDA 002 LLC's manager is George Matz, a resident of the State of Florida.

18.     Defendant XIMI FLORIDA 003 LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2742 Biscayne Boulevard, Miami, Florida 33137.  On information and belief, XIMI FLORIDA 003 LLC's manager is George Matz, a resident of the State of Florida.

19.     Defendant XIMI FLORIDA 004 LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2742 Biscayne Boulevard, Miami, Florida 33137.  On information and belief, XIMI FLORIDA 004 LLC's manager is George Matz, a resident of the State of Florida.

20.     Defendant XIMI FLORIDA 005 LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2742 Biscayne Boulevard, Miami, Florida 33137.  On information and belief, XIMI FLORIDA 005 LLC's manager is George Matz, a resident of the State of Florida.

21.     Defendant XIMI VOGUE, Inc. is a corporation incorporated and existing under the laws of the State of California, with its principal place of business at 530 Technology Drive, Suite 100 & 200, Irvine, California 92618.

22.     Defendant XIMI California 001 LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 100 West Broadway, Suite 1179, Glendale, California 91210 and an address at 2742 Biscayne Boulevard, Miami, Florida 91210.

23.     Defendant KKCUTE Inc. (formerly d/b/a XIMIVOGUE Chicago Inc.) is a corporation incorporated and existing under the laws of the State of Illinois, with an address at 5 Woodfield Mall #D307, Schaumburg, Illinois 60173.

24.     Defendant XIMIVOGUE North Carolina, LLC is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business located at 118 Hollow Oak Drive, Durham, North Carolina 27713.

## NATURE OF ACTION

25.     This is an action for trademark infringement, false designation of origin, and unfair competition, and dilution under the Trademark Act of 1946, as amended (The Lanham Act, 15 U.S.C. § 1051 *et seq.*), and related state causes of action based on Defendants' use of "VOGUE" in connection with their advertising, promoting, marketing, offering for sale, and selling "fast fashion" franchise services, online and brick-and-mortar retail services, and branded apparel and goods, in violation of Condé Nast's established rights in its federally registered marks and common law marks for related goods and services.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§ 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1331 (actions arising

under Federal laws), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C.

§ 1367 (supplemental jurisdiction over the state causes of action), and 28 U.S.C. § 1332

(diversity jurisdiction where matter in controversy exceeds $75,000 and is between citizens of

different states).  Condé Nast seeks damages in excess of $75,000.00.

5.     This Court has personal jurisdiction over Defendants, because Defendants

purposefully directed their activities at residents of Florida, and the litigation at issue results

from injuries to Condé Nast that arise from or relate to those activities.

6.     Upon information and belief, this Court has personal jurisdiction over Defendants

based on their continuous and systematic minimum contacts with residents of Florida, through

the distribution and sale of their goods and/or services in Florida, because Defendants regularly

transacts business in this District, and/or have offered goods or services in interstate commerce

through one or more interactive websites, and have caused injury in this District.

7.     Upon information and belief, this Court further has general personal jurisdiction

over Defendants XIMIVOGUE USA Franchising, LLC, XIMI VOGUE Florida, LLC,

XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC,

XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, and

XIMI VOGUE Florida Broward LLC, because they are Florida limited liability companies with

their principal places of business located in this District, and therefore are residents of the State

of Florida.

8.     Upon information and belief, this Court further has general personal jurisdiction over Defendants Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian because they are individual residents of the State of Florida and domiciled in this District.

9.     Upon information and belief, this Court further has general personal jurisdiction over Defendants XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, because they maintain their principal places of business in this District, and therefore are residents of the State of Florida.

10.     Upon information and belief, this Court has specific personal jurisdiction over Defendants under Florida's long-arm statute, Fla. Stat. § 48.193, because (1) Defendants are operating, conducting, engaging in, or carrying on a business or business venture in Florida and/or maintain their principal business offices in Florida; (2) the tortious acts or omissions occurred in Florida; (3) the damages occurred in Florida; and (4) jurisdiction based on Defendants' contacts with Florida is not inconsistent with the Constitution of the State of Florida or the Constitution of the United States.

11.     Upon information and belief, this Court further has specific personal jurisdiction over Defendant Zhejiang Xibin Import and Export Co., Ltd. because, on information and belief, they entered into contracts with Defendants XIMIVOGUE USA Franchising, LLC, XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, Yanet Barkley, XIMI VOGUE Florida Broward LLC, XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, XIMI VOGUE, Inc., XIMI California 001 LLC, KKCUTE Inc. (formerly d/b/a XIMIVOGUE

Chicago Inc.), and/or XIMIVOGUE North Carolina, LLC, each of whom are residents of, domiciled in, or otherwise subject to jurisdiction in this District, regarding the operation of the XIMIVOGUE "fast fashion" franchise in the United States, through which Defendants have committed and continue to commit the infringing and unlawful acts complained of herein.  On information and belief, Defendant Zhejiang Xibin Import and Export Co., Ltd. submitted to the jurisdiction, venue, and choice of law of this Court pursuant to those contract(s).

12.     Upon information and belief, this Court further has specific personal jurisdiction over Defendants XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, Yanet Barkley, XIMI VOGUE Florida Broward LLC, XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, XIMI VOGUE, Inc., XIMI California 001 LLC, KKCUTE Inc. (formerly d/b/a XIMIVOGUE Chicago Inc.), and XIMIVOGUE North Carolina, LLC because, on information and belief, they entered into contracts with Defendant XIMIVOGUE USA Franchising, LLC, a Florida company, to operate as franchisees of the XIMIVOGUE "fast fashion" franchise, through which Defendants have committed and continue to commit the infringing and unlawful acts complained of herein.  On information and belief, Defendants submitted to the jurisdiction, venue, and choice of law of this Court pursuant to those contract(s).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants XIMIVOGUE USA Franchising, LLC, XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, Alejandro Guerrero,

Stephenia Lima, Shahpour Dalirian, XIMI VOGUE Florida Broward LLC, XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, and XIMI FLORIDA 005 LLC reside in and/or maintain their principal places of business within this District; because a substantial part of the events giving rise to the claims occurred in this District; and because Defendants are subject to this Court's personal jurisdiction.

## FACTS

### CONDÉ NAST'S VOGUE MARKS

14.     Condé Nast is the owner of common law and registered trademark rights in and to the marks VOGUE, VOGUE.COM, VOGUE RUNWAY, and the stylized marks VOGUE (collectively, the "**VOGUE Mark**") in the U.S. and throughout the world.

15.     Condé Nast has continuously used the VOGUE Mark in connection with its magazine *Vogue* (the "**Vogue Magazine**") since at least as early as 1892.  The Vogue Magazine is one of the nation's premier fashion and beauty magazines.

16.     Condé Nast also uses the VOGUE Mark in connection with its corresponding website, vogue.com (the "**Vogue Website**").  The Vogue Magazine and Vogue Website both cover the subject matter of fashion, beauty, culture, living, and runway.  Since launching the Vogue Website, Condé Nast has prominently advertised and continually used the VOGUE Mark in providing information about fashion and beauty via the Internet.

17.     In its Vogue Magazine and Vogue Website, and through its sponsored events throughout the U.S., Condé Nast promotes the goods and services provided directly by Condé Nast and by others under its VOGUE Mark.

18.     By way of example, Condé Nast offers a "Vogue Shop" on the Vogue Website, through which consumers may purchase VOGUE-branded apparel, mugs, wrapping paper,

playing cards, jigsaw puzzles, and other goods, as shown below.  Exemplary screenshots from the Vogue Shop website are attached as **Exhibit 1**.





19.     As a result of Condé Nast's longstanding and continuous use of the VOGUE Mark, the VOGUE Mark has acquired substantial goodwill.

20.     Since its first use, Condé Nast has spent significant resources advertising, developing, and promoting the VOGUE Mark.  The VOGUE Mark has become synonymous with the high fashion and haute couture products, apparel, clothing, and services that are contained within the editorial pages and advertisements published in the Vogue Magazine and on the Vogue Website and are otherwise promoted online, through events, contests, licensed merchandise, and gatherings.  As a result, millions of consumers in the U.S. (including consumers in the state of Florida) and worldwide instantly associate high fashion, beauty, and luxury products, fashion, apparel, and accessories with Condé Nast's distinctive and famous VOGUE Mark.

21.     The VOGUE Mark has become well known in Florida, throughout the U.S., and abroad, and consumers recognize the mark as a symbol of Condé Nast's high quality goods and services.

22.     Thus, Condé Nast has established, through continuous, long-term use in commerce, extensive common law trademark rights in the VOGUE Mark.

23.     Additionally, Condé Nast is the owner of a number of trademark registrations issued by the U.S. Patent and Trademark Office for marks incorporating the VOGUE Mark, including, among others:

(a)     **Mark**: VOGUE

**U.S. Registration No.**: 0504006

**Filing Date**: January 31, 1948

**First Use**: December 17, 1892

**Use in Commerce**: December 17, 1892

**Registration Date**: November 16, 1948

**Register**: Principal

**Goods and Services covered**: "Magazine" (International Class 16).

A true and correct copy of U.S. Registration No. 504006 is attached hereto as **Exhibit 2**.  Condé Nast's registration is valid and subsisting and has become incontestable.

(b)     **Mark**: VOGUE

**U.S. Registration No.**: 0125542

**Filing Date**: July 26, 1918

**First Use**: December 17, 1892

**Use in Commerce**: December 17, 1892

**Registration Date**: May 20, 1919

**Register**: Principal

**Goods and Services covered**: "Magazines" (International Class 9).

A true and correct copy of U.S. Registration No. 0125542 is attached hereto as **Exhibit 3**.  Condé Nast's registration is valid and subsisting.

(c)    **Mark**:  VOGUE

**U.S. Registration No.**: 1336659

**Filing Date**: November 9, 1984

**First Use**: December 17, 1892

**Use in Commerce**: December 17, 1892

**Registration Date**: May 21, 1985

**Register**: Principal

**Goods and Services covered**: "Magazine" (International Class 16).

A true and correct copy of U.S. Registration No. 1336659 is attached hereto as **Exhibit 4**.  Condé Nast's registration is valid and subsisting and has become incontestable.

(d)    **Mark**:  VOGUE

**U.S. Registration No.**: 3069976

**Filing Date**: March 25, 2005

**First Use**: September 18, 2000

**Use in Commerce**: September 18, 2000

**Registration Date**: March 21, 2006

**Register**: Principal

**Goods and Services covered**: "Providing information about beauty via a global computer network" (International Class 44); "Providing information about fashion via a global computer network" (International Class 45).

A true and correct copy of U.S. Registration No. 3069976 is attached hereto as **Exhibit 5**. Condé Nast's registration is valid and subsisting and has become incontestable.

(e)    **Mark**: VOGUE.COM

    **U.S. Registration No.**: 2592452

    **Filing Date**: October 7, 1999

    **First Use**: September 18. 2000

    **Use in Commerce**: September 18, 2000

    **Registration Date**: July 9, 2002

    **Register**: Principal

    **Goods and Services covered**: "Providing fashion and beauty information distributed over television, satellite, wireless and global computer networks" (International Class 42).

A true and correct copy of U.S. Registration No. 2592452 is attached hereto as **Exhibit 6**. Condé Nast's registration is valid and subsisting and has become incontestable.



(f)    **Mark**:

**U.S. Registration No.**: 4138408

**Filing Date**: September 6, 2011

**First Use**: March 31, 2011

**Use in Commerce**: March 31, 2011

**Registration Date**: May 8, 2012

**Register**: Principal

**Goods and Services covered**: "Downloadable computer software applications for use in connection with smartphones, PDA devices, tablet computers and other portable and handheld digital electronic devices, namely, downloadable software for accessing, viewing, interacting with and downloading content and information from magazines and websites in the field of fashion, style and beauty" (International Class 9).

A true and correct copy of U.S. Registration No. 4138408 is attached hereto as **Exhibit 7**.  Condé Nast's registration is valid and subsisting and has become incontestable.

(g)     **Mark**: VOGUE

**U.S. Registration No.**: 4964884

**Filing Date**: April 12, 2013

**First Use**: August 1, 2012

**Use in Commerce**: August 1, 2012

**Registration Date**: May 24, 2016

**Register**: Principal

**Goods and Services covered**: "Advertising; Promotional services, namely, promoting the goods and services of others via digital and mobile networks; E-commerce services, namely, facilitating e-commerce business transactions by processing electronic orders for purchases of goods and services via a global computer network" (International Class 35).

A true and correct copy of U.S. Registration No. 4964884 is attached hereto as **Exhibit 8**.  Condé Nast's registration is valid and subsisting.

(h)     **Mark**:  VOGUE

**U.S. Registration No.**: 5465148

**Filing Date**: May 18, 2016

**First Use**: October 12, 2017

**Use in Commerce**: October 12, 2017

**Registration Date**: May 8, 2018

**Register**: Principal

**Goods and Services covered**: "Educational services, namely, providing live and online seminars, courses of instruction, exhibitions, workshops and conferences in the field of fashion, garments and textiles; entertainment services, namely, arranging and conducting fashion shows" (International Class 41).

A true and correct copy of U.S. Registration No. 5465148 is attached hereto as **Exhibit 9**.  Condé Nast's registration is valid and subsisting.



(i)     **Mark**:

**U.S. Registration No.**: 4964883

**Filing Date**: April 12, 2013

**First Use**: August 1, 2012

**Use in Commerce**: August 1, 2012

**Registration Date**: May 24, 2016

**Register**: Principal

**Goods and Services covered**: "Advertising; Promotional services, namely, promoting the goods and services of others via digital and mobile networks; E-commerce services, namely, facilitating e-commerce business transactions by processing electronic orders for purchases of goods and services via a global computer network" (International Class 35).

A true and correct copy of U.S. Registration No. 4964883 is attached hereto as **Exhibit 10**.  Condé Nast's registration is valid and subsisting.

(j)    **Mark**: VOGUE

**U.S. Registration No.**: 2701928

**Filing Date**: September 24, 2001

**First Use**: January 1, 1998

**Use in Commerce**: January 1, 1998

**Registration Date**: April 1, 2003

**Register**: Principal

**Goods and Services covered**: "Clothing, namely, T-shirts" (International Class 25).

18

A true and correct copy of U.S. Registration No. 2701928 is attached hereto as **Exhibit 11**.  Condé Nast's registration is valid and subsisting and has become incontestable.

# VOGUE

(k)   **Mark**:

**U.S. Registration No.**: 5655921

**Filing Date**: December 18, 2012

**First Use**: September 24, 2018

**Use in Commerce**: September 24, 2018

**Registration Date**: January 15, 2019

**Register**: Principal

**Goods and Services covered**: "Hand bags, totebags, luggage" (International Class 18).

A true and correct copy of U.S. Registration No. 5655921 is attached hereto as **Exhibit 12**.  Condé Nast's registration is valid and subsisting.

# VOGUE

(l)   **Mark**:

**U.S. Registration No.**: 5413137

**Filing Date**: July 24, 2014

**First Use**: August 15, 2017

**Use in Commerce**: August 15, 2017

**Registration Date**: February 27, 2018

**Register**: Principal

**Goods and Services covered**: "Sweatshirts, hoodies, pajamas and shirts" (International Class 25).

A true and correct copy of U.S. Registration No. 5413137 is attached hereto as **Exhibit 13**.  Condé Nast's registration is valid and subsisting.

**VOGUE**

(m)   **Mark**:

**U.S. Registration No.**: 5398198

**Filing Date**: June 22, 2016

**First Use**: August 15, 2017

**Use in Commerce**: August 15, 2017

**Registration Date**: February 6, 2018

**Register**: Principal

**Goods and Services covered**: "Lingerie, pajamas, shirts and sweatshirts" (International Class 25).

A true and correct copy of U.S. Registration No. 5398198 is attached hereto as **Exhibit 14**.  Condé Nast's registration is valid and subsisting.

**VOGUE**

(n)   **Mark**:

**U.S. Registration No.**: 5428664

**Filing Date**: July 24, 2014

**First Use**: June 30, 2016

**Use in Commerce**: June 30, 2016

**Registration Date**: March 20, 2018

**Register**: Principal

**Goods and Services covered**: "Handbags and wristlets" (International Class 18).

A true and correct copy of U.S. Registration No. 5428664 is attached hereto as **Exhibit 15**.  Condé Nast's registration is valid and subsisting.

# VOGUE

(o)      **Mark**:

**U.S. Registration No.**: 5645061

**Filing Date**: December 1, 2017

**First Use**: September 30, 2018

**Use in Commerce**: September 30, 2018

**Registration Date**: January 1, 2019

**Register**: Principal

**Goods and Services covered**: "Tote bags; shoulder bags; toiletry bags sold empty; luggage; travel accessories, namely, luggage tags; grooming kit bags sold empty; shaving kit bags sold empty; and dopp kit bags sold empty" (International Class 18).

A true and correct copy of U.S. Registration No. 5645061 is attached hereto as **Exhibit 16**.  Condé Nast's registration is valid and subsisting.

(p)      **Mark**:  VOGUE

**U.S. Registration No.**: 1659761

**Filing Date**: September 21, 1990

**First Use**: January 1990

**Use in Commerce**: January 1990

**Registration Date**: October 8, 1991

**Register**: Principal

**Goods and Services covered**: "Tote bags" (International Class 18).

A true and correct copy of U.S. Registration No. 1659761 is attached hereto as **Exhibit 17**.  Condé Nast's registration is valid and subsisting and has become incontestable.

(q)    **Mark**:  VOGUE

       **U.S. Registration No.**: 5915018

       **Filing Date**: July 9, 2019

       **First Use**: September 10, 2015

       **Use in Commerce**: September 10, 2015

       **Registration Date**: November 19, 2019

       **Register**: Principal

       **Goods and Services covered**: "Entertainment and education services in the nature of podcasts in the field of fashion, culture, celebrities and lifestyle" (International Class 41).

A true and correct copy of U.S. Registration No. 5915018 is attached hereto as **Exhibit 18**.  Condé Nast's registration is valid and subsisting.

(r)    **Mark**:  VOGUE RUNWAY

       **U.S. Registration No.**: 5069495

       **Filing Date**: April 16, 2015

       **First Use**: September 1, 2015

**Use in Commerce**: September 1, 2015

**Registration Date**: October 25, 2016

**Register**: Principal

**Goods and Services covered**: "Computer software applications for use in connection with smartphones, PDA devices, tablet computers and portable and handheld digital electronic devices, namely, software for accessing, viewing, interacting with and downloading content and information from websites and magazines in the fields of style, beauty and fashion" (International Class 9); "Providing a website featuring information on fashion, namely, coverage of international fashion show, reports on seasonal clothing trends, news and information concerning latest style trends and industry developments" (International Class 45).

A true and correct copy of U.S. Registration No. 5069495 is attached hereto as **Exhibit 19**.  Condé Nast's registration is valid and subsisting.

(s)    **Mark**:  VOGUE

**U.S. Registration No.**: 5686488

**Filing Date**: November 2, 2015

**First Use**: November 15, 2017

**Use in Commerce**: November 15, 2017

**Registration Date**: February 26, 2019

**Register**: Principal

**Goods and Services covered**: "Paper for wrapping and packaging; Gift wrapping paper" (International Class 16).

23

A true and correct copy of U.S. Registration No. 5686488 is attached hereto as **Exhibit 20**.  Condé Nast's registration is valid and subsisting.

(t)      **Mark**:  VOGUE

**U.S. Registration No.**: 5454848

**Filing Date**: March 22, 2017

**First Use**: November 30, 2017

**Use in Commerce**: November 30, 2017

**Registration Date**: April 24, 2018

**Register**: Principal

**Goods and Services covered**: "jigsaw puzzles" (International Class 28).

A true and correct copy of U.S. Registration No. 5454848 is attached hereto as **Exhibit 21**.  Condé Nast's registration is valid and subsisting.

(u)      **Mark**:  VOGUE

**U.S. Registration No.**: 6131876

**Filing Date**: September 12, 2019

**First Use**: November 21, 2019

**Use in Commerce**: November 21, 2019

**Registration Date**: August 18, 2020

**Register**: Principal

**Goods and Services covered**: "playing cards" (International Class 28).

A true and correct copy of U.S. Registration No. 6131876 is attached hereto as **Exhibit 22**.  Condé Nast's registration is valid and subsisting.

# VOGUE

(v)     **Mark**:

**U.S. Registration No.**: 6289836

**Filing Date**: November 30, 2017

**First Use**: November 4, 2019

**Use in Commerce**: November 4, 2019

**Registration Date**: March 9, 2021

**Register**: Principal

**Goods and Services covered**: "Fitness apparel, namely, tops and bottoms; tops as clothing" (International Class 25).

A true and correct copy of U.S. Registration No. 6289836 is attached hereto as **Exhibit 23**.  Condé Nast's registration is valid and subsisting.

(w)     **Mark**:  VOGUE BUSINESS

**U.S. Registration No.**: 6034637

**Filing Date**: September 13, 2018

**First Use**: February 5, 2019

**Use in Commerce**: February 5, 2019

**Registration Date**: April 14, 2020

**Register**: Principal

**Goods and Services covered**: "Membership program services, namely, providing members with access to products and services in the fields of fashion and beauty, special offers and discounts on products in the fields of fashion and beauty, and discounts and special access to fashion and

beauty events and venues; advertising and marketing services; Providing employment information in the fashion and beauty industry; Online business research services that compile data and track insights and trends in the fashion, style and beauty industry" (**International Class 35**).

A true and correct copy of U.S. Registration No. 6034637 is attached hereto as **Exhibit 24**. Condé Nast's registration is valid and subsisting.

(x)     **Mark**:  VOGUE BUSINESS

**U.S. Registration No.**: 6173612

**Filing Date**: March 10, 2020

**First Use**: February 5, 2019

**Use in Commerce**: February 5, 2019

**Registration Date**: October 13, 2020

**Register**: Principal

**Goods and Services covered**: "Providing business information in the field of fashion and beauty provided via a digital network" (International Class 35).

A true and correct copy of U.S. Registration No. 6173612 is attached hereto as **Exhibit 25**. Condé Nast's registration is valid and subsisting.

(y)     **Mark**:  VOGUE

**U.S. Registration No.**: 6181442

**Filing Date**: October 7, 2019

**First Use**: November 21, 2019

**Use in Commerce**: November 21, 2019

**Registration Date**: October 20, 2020

**Register**: Principal

**Goods and Services covered**: "stationery" (International Class 16).

A true and correct copy of U.S. Registration No. 6181442 is attached hereto as **Exhibit 26**. Condé Nast's registration is valid and subsisting.

(z)     **Mark**: VOGUE

**U.S. Registration No.**: 6248343

**Filing Date**: March 6, 2019

**First Use**: June 30, 2015

**Use in Commerce**: June 30, 2015

**Registration Date**: January 19, 2021

**Register**: Principal

**Goods and Services covered**: "Plastic coasters" (International Class 21).

A true and correct copy of U.S. Registration No. 6248343 is attached hereto as **Exhibit 27**. Condé Nast's registration is valid and subsisting.

(aa)    **Mark**: VOGUE

**U.S. Registration No.**: 6324126

**Filing Date**: May 14, 2020

**First Use**: January 1, 2018

**Use in Commerce**: January 1, 2018

**Registration Date**: April 13, 2021

**Register**: Principal

**Goods and Services covered**: "Transmission of video and audio content via digital networks and electronic communications networks" (International Class 38).

A true and correct copy of U.S. Registration No. 6324126 is attached hereto as **Exhibit 28**. Condé Nast's registration is valid and subsisting.

(bb)   **Mark**: GOOD MORNING VOGUE

**U.S. Registration No.**: 6315601

**Filing Date**: September 22, 2020

**First Use**: September 14, 2020

**Use in Commerce**: September 14, 2020

**Registration Date**: April 6, 2021

**Register**: Principal

**Goods and Services covered**: "Entertainment services, namely, an ongoing series in the field of fashion provided through webcast" (International Class 41).

A true and correct copy of U.S. Registration No. 6315601 is attached hereto as **Exhibit 29**. Condé Nast's registration is valid and subsisting.

(cc)   **Mark**: VOGUE WEDDINGS

**U.S. Registration No.**: 6472359

**Filing Date**: June 22, 2020

**First Use**: August 20, 2020

**Use in Commerce**: August 20, 2020

**Registration Date**: August 31, 2021

**Register**: Principal

**Goods and Services covered**: "Providing an online monthly column in the field of fashion; providing online publications, namely, non-downloadable newsletters in the field of fashion" (International Class 41).

A true and correct copy of U.S. Registration No. 6472359 is attached hereto as **Exhibit 30**. Condé Nast's registration is valid and subsisting.

24.     Condé Nast's foregoing federally-registered, applied-for, and common law marks shall be hereinafter referred to collectively as the "**VOGUE Marks**."

25.     Condé Nast has continuously used the VOGUE Marks in the United States as an identifier of Condé Nast and as the source and origin of its high quality printed and online publications, fashion, beauty, and lifestyle products, apparel, clothing, and services.

26.     Condé Nast has expended considerable time, resources, and effort in promoting the VOGUE Marks and developing substantial goodwill associated therewith throughout the United States.

27.     The VOGUE Marks are inherently distinctive when used in conjunction with Condé Nast's goods and services.

28.     Due to the continuous and longstanding use of the VOGUE Marks by Condé Nast, the VOGUE Marks have come to indicate a single source of goods and services. The VOGUE Marks have further come to indicate Condé Nast as the single source of such quality goods and services.

29.     As a result of Condé Nast's long and exclusive use of its VOGUE Marks, and the significant volume of sales, advertising, and promotion of the VOGUE Marks for the past 120+ years, the VOGUE Marks have achieved widespread and favorable recognition. Thus, the marks

are an exclusive asset of substantial value and a symbol of Condé Nast, its quality goods and services, and its goodwill.

30.     Condé Nast and its use of the VOGUE Marks are well-known and famous.

## DEFENDANTS' INFRINGEMENT OF THE VOGUE MARKS

31.     Without Condé Nast's knowledge or consent, and beginning long after Condé Nast had established extensive and valuable goodwill in connection with the VOGUE Marks, Defendants commenced to use, and is currently using, in interstate commerce and commerce affecting interstate commerce, the term "XIMI VOGUE" and "XIMIVOGUE" (the "**Infringing Mark**") in connection with the sale, offering for sale, distribution, advertising, and promotion of their products and services, including, without limitation, "fast fashion" franchise services, brick-and-mortar and online retail services, VOGUE-branded apparel and accessories, jewelry, shoes, beauty and skincare products, paper goods, home goods, consumer goods, and related goods and services.

**A.     DEFENDANTS' INFRINGING FRANCHISE**

32.     On information and belief, Defendants jointly own and/or operate a "fast fashion" franchise business under the Infringing Marks in the United States (the "**Infringing Franchise**").

33.     On information and belief, Defendant Zhejiang Xibin Import and Export Co., Ltd. owns and operates the website located at the domain <ximiso.com> (the "**Infringing Franchise Website**").   Exemplary screenshots from the Infringing Franchise Website are attached as **Exhibit 31**.

34.     According to the Franchise Website, XIMIVOGUE is "an international fast fashion franchise brand aiming at creating a valuable lifestyle."   XIMIVOGUE sells a variety of "cost-effective products" at "1700 global stores" across the world, including the United States.

35.     In the fashion industry, "fast fashion" refers to inexpensive clothing produced rapidly by mass-market retailers in response to fashion trends originating from luxury brands and runway fashion shows. Fast fashion clothing collections are generally copied from the most recent fashion trends presented at Fashion Week in both the spring and autumn of every year.

36.     Fast fashion utilizes trend replication, rapid production, and low quality materials in order to bring inexpensive styles to the public.

37.     Because fast fashion emphasizes making fashion trends quickly and cheaply, the products are generally made in a rushed manner, resulting in low quality merchandise.

38.     On information and belief, fast fashion retailers can sell products at significantly reduced prices because they typically purchase from manufacturers who do not comply with relevant production standards, and who cut costs through the use of inferior materials, unapproved and substandard manufacturing processes, and violative labor practices, resulting in poor quality and potentially dangerous consumer goods.

39.     Defendants prominently use the Infringing Mark to steer business towards Defendants' "fast fashion" franchise services.

40.     For example, the Infringing Franchise Website invites users to "follow the 4 steps, quick to make our own business with only a small amount of investment":



41.     Specifically, potential agents and franchisees must complete an online application form and "get a reply from XIMIVOGUE"; visit the nearest "company / store / warehouse of XIMIVOGUE"; sign an agreement; and "open XIMIVOGUE franchise store" and receive "long-term service and support."

42.     According to the Franchise Website, "XIMIVOGUE has cooperated with 36 agents and franchisees in over 50 countries and regions," including the United States.

43.     On information and belief, Defendant Zhejiang Xibin Import and Export Co., Ltd. ("**Master Franchisor Defendant**") is the master franchisor for the Infringing Franchise, through which Master Franchisor Defendant contracts with agents and franchisees to offer for sale and sell the alleged right to open fast fashion stores and sell products or services under the Infringing Mark throughout the world.

44.     On information and belief, Defendant XIMIVOGUE USA Franchising, LLC ("**U.S. Franchisor Defendant**"), entered into agreement(s) with Master Franchisor Defendant to act is its agent to operate the Infringing Franchise in the United States and offer for sale and sell the alleged right to open fast fashion stores and sell products or services under the Infringing Marks to franchisees located in the United States.

45.     Upon information and belief, Defendants XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, XIMI VOGUE Florida Broward LLC, XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, XIMI VOGUE, Inc., XIMI California 001 LLC, KKCUTE Inc. (formerly d/b/a XIMIVOGUE Chicago Inc.), XIMIVOGUE North Carolina, LLC (collectively, the "**Franchisee Defendants**") have entered

into agreement(s) with Master Franchisor Defendant and U.S. Franchisor Defendant to operate Infringing Franchise stores in Florida and nationwide.

46.     On information and belief, Defendants have and currently own and operate Infringing Franchise stores across the United States (collectively, the "**Infringing Stores**"), including, but not limited to, at least the following locations:

a.   Dolphin Mall, 11401 NW 12th, Store 288, Miami, Florida 33172;

b.   Dadeland Mall, 7535 N. Kendall Drive, Miami, Florida 33156;

c.   Treasure Coast Square, 3260 NW Federal Highway, Jensen Beach, Florida 34957;

d.   The Florida Mall, 8001 S. Orange Blossom Trail, Orlando, Florida 32809;

e.   Glendale Galleria, 100 W. Broadway, Glendale, California 91210;

f.   Crabtree Valley Mall, 4325 Glenwood Avenue, Raleigh, North Carolina 27612; and

g.   Woodfield Mall, 5 Woodfield Mall, D307 Schaumburg, Illinois 60173.

47.     On information and belief, Defendants share a continuity of structure and personnel that demonstrates a relationship among those associated with the Infringing Franchise, including, but not limited to, common and shared distribution; shared purchasing of consumer goods; collective marketing (including but not limited to listings on the same website and social media accounts); and common and overlapping ownership.

48.     On information and belief, Defendants Guerrero, Lima, Dalirian, and Barkley own, operate, and manage U.S. Franchisor Defendant, and thus control and manage the activity of U.S. Franchisor Defendant.

49.     On information and belief, Guerrero, Lima, and/or Dalirian own, operate, and manage several Franchisee Defendants, including without limitation, XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour, LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke, LLC, XIMIVOGUE Westland, LLC (through XIMI Vogue Florida, LLC), XIMI VOGUE Plaza Del Sol, LLC, and XIMIVOGUE LLC, and thus control and manage the activity of those Franchisee Defendants.

50.     U.S. Franchisor Defendant and Franchisee Defendants XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour, LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke, LLC, and XIMIVOGUE LLC, also share a common principal business address at 11401 NW 12 Street, Suite 288, Miami, Florida 33172.  Franchisee Defendant XIMI VOGUE Plaza Del Sol, LLC, also lists 11401 NW 12 Street, Suite 288, Miami, Florida 33172 as its designated mailing address.

51.     Franchisee Defendants XIMI FLORIDA 001 LLC, XIMI FLORIDA 002 LLC, XIMI FLORIDA 003 LLC, XIMI FLORIDA 004 LLC, XIMI FLORIDA 005 LLC, also share common management under George Matz, a Florida resident, and a common business address at 2742 Biscayne Boulevard, Miami, Florida 33137.  Franchisee Defendant XIMI California 001 LLC also lists 2742 Biscayne Boulevard, Miami, Florida 91210 as a business address.

52.     On information and belief, in their role as managers of U.S. Franchisor Defendant (and, for Guerror, Lima, and Dalirian, several Franchisee Defendants), Guerrero, Lima, Dalirian, and Barkley were and are actively and personally involved in the wrongful acts giving rise to this action.

53.     On information and belief, Guerrero, Lima, Dalirian, and Barkley were and are a moving, active, conscious force behind Defendants' infringement of the VOGUE Marks.

54.     On information and belief, Guerrero, Lima, Dalirian, and Barkley personally took part in, ratified, and/or directed others to engage in the infringing or wrongful activity.  As a result, Guerrero, Lima, Dalirian, and Barkley are personally liable for the wrongful acts they have committed as alleged herein.  Further, as managers of U.S. Franchisor Defendant (and, for Guerrero, Lima, and Dalirian, several Franchisee Defendants), Guerrero, Lima, Dalirian, and Barkley have a direct financial interest in those Defendant entities, and the right and ability to supervise those Defendant entities' activities, including the wrongful acts alleged herein.

55.     On information and belief, Guerrero, Lima, Dalirian, and Barkley knowingly, personally, and actively participated in, authorized, directed, ordered, controlled, participated, approved, or ratified Defendants' infringement of the VOGUE marks.

## B.     DEFENDANTS' INFRINGING GOODS AND SERVICES

56.     In addition to their Infringing Franchise services, Defendants also advertise, promote, offer for sale, sell, and import unauthorized products under the Infringing Mark on the Infringing Franchise Website and Infringing Stores, including, without limitation, apparel, hats, shoes, handbags, wallets, luggage, cosmetics, skincare products, electronics, household goods, office and paper goods, toys, and other consumer goods and related accessories (collectively, the "**Infringing Products**").

57.     Defendants display the Infringing Mark prominently in their Infringing Store, on the Infringing Franchise Website, on the Infringing Products, and in the Infringing Product packaging, as depicted below:











58.     Upon information and belief, Defendants also own and operate several social media accounts using the Infringing Mark, including without limitation, the Facebook accounts under the handle "@XimiVogueOfficial" (accessible at www.facebook.com/XimiVogueOfficial/) and "@XimiVogueUSA" (accessible at https://www.facebook.com/Ximi-Vogue-USA-652660548501480/); the Twitter account under the handle "@XimiVogue_" (accessible at www.twitter.com/XimiVogue_); and the Instagram accounts under the handle "@XimiVogue.Official" (accessible at www.instagram.com/XimiVogue.Official) and the LinkedIn account under the handle "@XimiVogue" (accessible at www.linkedin.com/company/XimiVogue).   A true and correct copy of exemplary screenshots from Defendants' social media accounts is attached hereto as collective **Exhibit 32**.

59.     On information and belief, Defendants selected the Infringing Mark solely because of the fame and reputation built up in the mark by Condé Nast over many years and at great expense, and Defendants' sole intention in selecting the mark was to trade on the goodwill of Condé Nast.

60.     Defendants use the term "VOGUE" and the Infringing Mark in connection with marketing and providing their goods and services to citizens of Florida and other states, and advertises their goods and services to citizens of Florida and other states via the Internet, as reflected in the following  representative screenshots taken from the sites identified in the preceding paragraphs.





61.     Defendants' Infringing Mark is identical to the VOGUE Mark.

62.     Defendants' activities have a substantial effect upon Condé Nast's interstate usage of its VOGUE Mark, reputational goodwill, and sales.  The continued, unauthorized use of "VOGUE" by Defendants would subject the goodwill and reputation of Condé Nast to the hazards of Defendants' business.

63.     Defendants are using Condé Nast's VOGUE Mark without Condé Nast's authorization.

64.     Defendants' use of the Infringing Mark is specifically designed to create an association or suggestion of affiliation between Defendants and Condé Nast.

65.     For example, the Infringing Franchise Website touts the Infringing Franchise as a "fashion franchise brand aiming at creating a valuable lifestyle" with a vision of becoming "the top fast fashion brand," and claims that the Infringing Franchise was established based on "fashion, quality, & personality" and offers "fashionable products covering various aspects of your life!"

66.     Through their use of the Infringing Mark, including without limitation, operating the Infringing Franchise; advertising, promoting, offering for sale, and selling retail products in the Infringing Stores, on the Infringing Franchise Website, and on social media accounts; and using the Infringing Mark on or in connection with the sale of Infringing Goods, Defendants seek to unfairly trade off the valuable goodwill and reputation built by Condé Nast in its VOGUE Marks.

67.     Defendants are using "VOGUE" in U.S. commerce in connection with apparel and consumer goods, brick-and-mortar and online retail services, franchise services, and related

products and services.  These goods and services are the same or closely related to the goods and services being offered by Condé Nast under its pre-existing VOGUE Marks.

68.     At a minimum, Defendants' target customers overlap with Condé Nast's target customers—men and women seeking fashionable clothing, beauty, and lifestyle content and products.  As such, Condé Nast and Defendants compete for a common pool of customers.

69.     Defendants' services are overlapping and/or closely related to Condé Nast's goods and services rendered under its VOGUE Marks.

70.     Defendants' use of the Infringing Mark so resembles Condé Nast's VOGUE Marks as to be likely, when used on or in connection with the goods and services identified above, to cause confusion, to cause mistake, or to deceive.

71.     Defendants' use of a nearly identical mark for goods and services closely related to Condé Nast's goods and services offered under its VOGUE Marks is without authority or license from Condé Nast and creates a likelihood of confusion, deception, and mistake.

72.     Defendants' use of the Infringing Mark in interstate commerce to advertise, promote, and sell their goods and services, including through the Infringing Franchise, Infringing Stores, and Infringing Website, was never approved, permitted or endorsed by Condé Nast, and occurred after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the VOGUE Marks.

73.     Defendants' use of the Infringing Mark in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent, and began long after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the VOGUE Marks.

**C.    DEFENDANTS' CONTINUED AND WILLFUL INFRINGEMENT DESPITE ACTUAL KNOWLEDGE OF CONDÉ NAST'S RIGHTS IN THE VOGUE MARKS**

74.    On March 28, 2020, Master Franchisor Defendant filed a federal trademark application for the infringing XIMIVOGUE mark for use in connection with "Business management consultancy relating to franchising; Commercial administration of the licensing of the goods and services of others in connection with a franchise; Coupon procurement services for others; Import-export agency services; Market analysis; Organization of fairs and exhibitions for commercial and advertising purposes; Commercial information and advice for consumers in the choice of products and services," and which was assigned U.S. Application Serial No. 87/852,918 (the "**Infringing Application**").

75.    On July 23, 2018, the USPTO refused registration of the Infringing Application based on a likelihood of confusion with Condé Nast's VOGUE marks subject to U.S. Registration No. 4964884 and U.S. Registration No. 4964883 (Exhibits 8 and 10 hereto).

76.    The USPTO rejected Master Franchisor Defendant's arguments and, on July 24, 2019, issued a final refusal of the Infringing Application based on a likelihood of confusion with Condé Nast's VOGUE marks subject to U.S. Registration No. 4964884 and U.S. Registration No. 4964883.  The Final Refusal found, among other things, that the Infringing Mark was "highly similar" to Condé Nast's registered VOGUE marks and the services sought to be registered in the Infringing Application were "highly related" to Condé Nast's services.

77.    The Infringing Application was abandoned on January 27, 2020.

78.    On June 16, 2020, Condé Nast sent letters to U.S. Franchisor Defendant (care of Defendant Guerrero) and a XIMIVOGUE representative purporting to be the "International Franchise Manager" for Master Franchisor Defendant demanding that Defendants and their franchisees cease and desist from all use of the Infringing Mark, including all online use,

signage, marketing, promotional, and other printed materials, as well as all social media sites promoting the Infringing Franchise, Infringing Stores, and Infringing Goods.

79.     The June 16, 2020 letters requested responses by June 29, 2020.

80.     Neither Master Franchisor Defendant nor U.S. Franchisor Defendant responded to the June 16, 2020 letters by June 29, 2020.

81.     On July 10, 2020, Condé Nast sent Franchisee Defendants XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMIVOGUE Westland LLC, XIMI VOGUE Plaza Del Sol, LLC, XIMIVOGUE LLC, XIMI VOGUE Florida Broward LLC, XIMI VOGUE, Inc., XIMI California 001 LLC, KKCUTE Inc. (formerly d/b/a XIMIVOGUE Chicago Inc.), and XIMIVOGUE North Carolina, LLC letters demanding that Defendants cease and desist from all use of the Infringing Mark, including all online use, signage, marketing, promotional, and other printed materials, as well as all social media sites promoting itself. cease and desist from all use of the Infringing Mark, including all online use, signage, marketing, promotional, and other printed materials, as well as all social media sites promoting the Infringing Franchise, Infringing Stores, and Infringing Goods.

82.     The letters to Franchisee Defendants XIMI VOGUE Florida, LLC, XIMIVOGUE Bal Harbour LLC, XIMIVOGUE Bayside LLC, XIMIVOGUE Pembroke LLC, XIMI VOGUE Plaza Del Sol, LLC were sent to Defendant Guerrero, and the letter to XIMIVOGUE LLC was sent to Defendants Guerrero and Lima, on behalf of the Franchisee Defendants.

83.     Defendants have failed to comply with Condé Nast's demands.

84.     Therefore, Defendants' use of the Infringing Mark in connection with Defendants' their Infringing Franchise, online and retail presence, and associated goods and

services has been made notwithstanding Condé Nast's well-known and prior established rights in the VOGUE Marks and with both actual and constructive notice of Condé Nast's Registered Marks under 15 U.S.C. § 1072.

85.     Defendants' continued use of the Infringing Mark constitutes malicious, willful, fraudulent and deliberate infringement.

**D.     HARM TO CONDÉ NAST**

86.     Condé Nast's first use in commerce of the VOGUE Marks predates Defendants' first use of the Infringing Mark and, therefore, Condé Nast has priority over Defendants' first use of the Infringing Mark.

87.     Condé Nast's customers, Defendants' customers, and the general public are likely to be misled into believing that Defendants' products and services are provided, sponsored, or approved by Condé Nast.

88.     Defendants have infringed Condé Nast's VOGUE Marks by various acts, including, without limitation, the advertising, promotion, and provision of their products and services under the Infringing Mark and the other variations reflected herein.

89.     Because Defendants' use of the Infringing Mark in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent, Condé Nast does not control the quality (or lack thereof) of Defendants' goods and services.

90.     Due to Defendants' use of the Infringing Mark to advertise, promote, and sell goods and services of a lesser quality than Condé Nast's high quality printed and online publications, lifestyle products, apparel, clothing, and services, upon information and belief, the public is likely to associate the lack of quality or lack of prestige in Defendants' goods and services with Condé Nast's goods and services.

91.     For example, on April 30, 2020, Defendant XIMIVOGUE LLC recalled children's neck pillows sold through the Infringing Franchise due to violations of the Federal Lead Paint Ban and, specifically, the risk of lead poisoning from paint on the zippers and zipper pulls used on the product.  A true and correct copy of the Consumer Product Safety Commission Recall Notice is attached hereto as **Exhibit 33**.

92.     By means of further example, Franchisee Defendant XIMI California 001 LLC has been accused by multiple customers of stealing from customers by ringing up purchases for hundreds of dollars over the purchase price.  *See* Yelp complaints attached as **Exhibit 34**.

93.     In selecting and using a mark that includes the term "VOGUE" in connection with the sale and offering of their goods and services, notwithstanding their actual knowledge of Condé Nast's rights, Defendants have acted and continue to act with wanton disregard for Condé Nast's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which Condé Nast has established in the VOGUE Marks.

94.     Defendants' actions have caused and continue to cause Defendants' services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Condé Nast, the Vogue Magazine, and/or the Vogue Website.

95.     The Infringing Mark utilized by Defendants are a colorable imitation of and confusingly similar to the VOGUE Marks.

96.     Defendants' activities are likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by Defendants.

97.     Defendants' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the origin, sponsorship, or approval of the goods and services offered by Defendants with or by Condé Nast.

98.     Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Condé Nast's business, reputation, and goodwill of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.  Condé Nast has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I –
### FEDERAL TRADEMARK INFRINGEMENT
### UNDER LANHAM ACT § 32(1)

99.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

100.     Condé Nast is the owner of valid, federally registered VOGUE Marks, as described above.

101.     Defendants' use of Condé Nast's registered VOGUE Marks and colorable imitations thereof in connection with their Infringing Franchise, online and retail presence, and associated goods and services in commerce is likely to cause confusion, to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

102.     Defendants' use of the registered VOGUE Marks and colorable imitations thereof constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Condé Nast to: injunctive relief; damages sustained by Condé Nast, including a judgment trebling any  damages award; Defendants' profits made from their infringing use of the VOGUE Marks; and all costs necessary to remediate the infringing uses and

their effects, increased subject to the principles of equity, pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

103.    Defendants' intentional, deliberate, and willful use of the VOGUE Marks and colorable imitations thereof with knowledge of Condé Nast's rights in the registered VOGUE Marks constitutes a willful violation of 15 U.S.C. § 1114(1) and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

## COUNT II -
## FEDERAL UNFAIR COMPETITION
## UNDER LANHAM ACT § 43(a)

104.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

105.    Condé Nast owns valid common law trademark rights in the VOGUE Marks.

106.    Defendants' use of the Infringing Mark is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Condé Nast, and as to the origin, sponsorship, or approval of Defendants' goods and services by Condé Nast.   Additionally, the public is likely to believe that Defendants' goods and services are provided, sponsored, approved, or licensed by—or are affiliated or legitimately connected with—Condé Nast, all to Condé Nast's irreparable harm and in violation of 15 U.S.C. § 1125(a).

107.    Defendants have used names and marks which are confusingly similar to Condé Nast's VOGUE Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made, approved, or sponsored by, or are affiliated with, Condé Nast.

108.    Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services made or authorized by, or affiliated with, Condé Nast, and with the intent to deceive and defraud the public.

109.    Defendants are knowingly infringing the VOGUE Marks in violation of the common law trademark rights of Condé Nast.

110.    Defendants' acts constitute unfair competition and passing off, and have caused Condé Nast damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Condé Nast's goodwill and reputation caused by Defendants.

111.    The use by Defendants of the Infringing Mark as described above, is likely to cause confusion as to the source of Defendants' goods and services and constitutes unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Condé Nast to an injunction, damages sustained by Condé Nast, treble its damages, Defendants' profits made from their infringing use of the VOGUE Marks, and all costs necessary to remediate the unfair competition and passing off and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

112.    Defendants' intentional, deliberate, and willful use of the Infringing Mark with knowledge of Condé Nast's common law trademark rights in the VOGUE Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

113.    Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

**COUNT III –**
**FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN**
**UNDER LANHAM ACT § 43(a)**

114.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

115.    Defendants have caused products and services to enter interstate commerce with the designation and mark "VOGUE" connected therewith.

116.    Defendants' use of said designation and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Condé Nast and as to the origin, sponsorship, or approval of such goods and services by Condé Nast.

117.    Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Condé Nast and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities.

118.    Defendants' acts constitute false association and false designation of origin, and have caused Condé Nast damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Condé Nast's goodwill and reputation caused by Defendants.

119.    The use by Defendants of the Infringing Mark as described above, is likely to cause confusion as to the source of Defendants' goods and services and constitutes false association and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), entitling Condé Nast to an injunction, damages sustained by Condé Nast, treble its damages, Defendants' profits made from their infringing use of the VOGUE Marks, and all costs necessary to remediate the false association and designation of origin and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

120.    Defendants' intentional, deliberate, and willful use of the Infringing Marks with knowledge of Condé Nast's common law trademark rights in the VOGUE Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

121.    Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

## COUNT IV –
## DILUTION UNDER LANHAM ACT § 43(c)

122.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

123.    The VOGUE Marks are distinctive and famous marks within the meaning of 15 U.S.C. § 1125(c) by virtue of their inherent and acquired distinctiveness; the long duration and wide extent of the VOGUE Marks' use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the VOGUE Marks; the large volume and wide geographic extent of sales of goods and services offered under the VOGUE Marks; the high degree of actual recognition of the VOGUE Marks; and the longstanding federal registrations of the VOGUE Marks.

124.     Defendants' use of Condé Nast's VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has been used in commerce for Defendants' commercial gain.

125.     Even if the Court finds Defendants' use of the Infringing Mark is not likely to cause confusion with Condé Nast's VOGUE Marks, Defendants have engaged in dilution by blurring because Defendants' use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Mark and Condé Nast's VOGUE Marks that impairs the actual or acquired distinctiveness of Condé Nast's VOGUE Marks.

126.     Defendants have engaged in dilution by tarnishment because Defendants' use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and Condé Nast's VOGUE Marks that harms the reputation and goodwill associated with Condé Nast's VOGUE Marks.

127.     Defendants only recently adopted "VOGUE," well after the VOGUE Marks became famous.

128.     The Infringing Mark used by Defendants as illustrated above is identical to the VOGUE Marks.

129.     Defendants use the Infringing Mark in commerce.  Such use is commercial in nature.

130.     Defendants' use of VOGUE in connection with their Infringing Franchise, online and retail presence, and associated goods and services has caused, or is likely to cause, dilution of Condé Nast's VOGUE Marks.  It is likely that the ordinary consuming public of the U.S. will

make an association arising from the similarity of the marks that impairs the distinctiveness of the VOGUE Marks.

131.    Defendants' use of the VOGUE Marks constitutes dilution under 15 U.S.C. § 1125(c), and Condé Nast is entitled to an injunction prohibiting such further use.

132.    Defendants' acts have caused Condé Nast damages, and Condé Nast seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants through their unlawful acts, for the damages sustained by Condé Nast, and for all costs necessary to remediate the unlawful acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117.

133.    Defendants willfully intended to trade on the recognition of Condé Nast's famous marks, entitling Condé Nast to treble its damages and Defendants' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

134.    Defendants' willful conduct renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

135.    Pursuant to 15 U.S.C. § 1118, Condé Nast is entitled to impoundment and destruction of infringing articles.

**COUNT V –**
**FLORIDA COMMON LAW TRADEMARK INFRINGEMENT**

136.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

137.    Condé Nast first adopted and used the VOGUE Marks as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

138.    The VOGUE Marks are valid and protectable marks by virtue of their association with such goods and services and Condé Nast's federal registrations.

139.    Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

140.    As a result, use of Defendants' Infringing Mark at the same time as Condé Nast's VOGUE Marks is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

141.    Defendants' use of Condé Nast's VOGUE Marks is without the consent of Condé Nast.

142.    Defendants have acted with the knowledge of Condé Nast's VOGUE Marks, and with the intent to cause confusion and/or trade on Condé Nast's reputation and goodwill.

143.    The use by Defendants of the Infringing Mark and marks incorporating VOGUE to identify its goods and services, as described above, constitutes infringement of Condé Nast's rights in its marks pursuant to the common law of the State of Florida, for which infringement Condé Nast is entitled to all remedies available to it under the common law of the State of Florida.

## COUNT VI –
## FLORIDA TRADEMARK AND SERVICE MARK DILUTION

144.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 of this Complaint as if fully set forth herein.

145.    The VOGUE Marks are distinctive and famous marks in the State of Florida within the meaning of Fla. Stat. § 495.151 by virtue of the high degree of inherent and acquired distinctiveness of the VOGUE Marks in this State; the long duration and wide extent of use of the VOGUE Marks in connection with the goods and services with which the VOGUE Marks are

used; the long duration and wide extent of advertising and publicity of the VOGUE Marks in this State; the wide geographic extent of the trading area in which the VOGUE Marks are used; the high degree of recognition of the VOGUE Marks in this State in Condé Nast and Defendants' channels of trade; and the longstanding federal registrations of the VOGUE Marks.

146.    Condé Nast has used its VOGUE Marks extensively throughout this State and this District for over 126 years.

147.    Defendants' use of Condé Nast's VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has been used in commerce for Defendants' commercial gain.

148.    Even if the Court finds Defendants' use of the Infringing Mark is not likely to cause confusion with Condé Nast's VOGUE Marks, Defendants have engaged in dilution by blurring because Defendants' use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Mark and Condé Nast's VOGUE Marks that impairs the actual or acquired distinctiveness of Condé Nast's VOGUE Marks.

149.    Defendants have engaged in dilution by tarnishment because Defendants' use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and Condé Nast's VOGUE Marks that harms the reputation and goodwill associated with Condé Nast's VOGUE Marks.

150.    Defendants only recently adopted "VOGUE", well after the VOGUE Marks became famous.

151.    The Infringing Mark being used by Defendants as illustrated herein is identical to the VOGUE Mark.

152.    Defendants use the Infringing Mark in commerce.  Such use is commercial in nature.

153.    Defendants' use of the Infringing Mark in connection with their goods and services has caused, or is likely to cause, dilution of Condé Nast's VOGUE Marks.  It is likely that the ordinary consuming public in Florida and the Miami area will make an association arising from the similarity of the marks that impairs the distinctiveness of the VOGUE Marks.

154.    Defendants willfully intended to trade on the recognition of Condé Nast and its famous VOGUE Marks.

155.    Defendants' acts have caused Condé Nast damages, and Condé Nast is entitled to injunctive relief and all other available statutory remedies under Fla. Stat. § 495.151, including, without limitation: Defendants' profits made by Defendants through their unlawful acts; damages sustained by Condé Nast; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

156.    Condé Nast further seeks judgment for three times the amount of Defendants' profits or Condé Nast's damages, whichever is greater, due to the nature of Defendants' conduct pursuant to Fla. Stat. §§ 495.151(2) and 495.141.

157.    Pursuant to Fla. Stat. § 495.151(2) and equity, Condé Nast is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

158.    Pursuant to Fla. Stat. §§ 495.151(2) and 495.141(1), Condé Nast is entitled to impoundment and destruction of infringing articles.

## COUNT VII –
## <u>VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>

159.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 and Counts I to VI of this Complaint as if fully set forth herein.

160.    As alleged herein, Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204, entitling Condé Nast to all remedies available, including damages and reasonable attorneys' fees and costs.

161.    Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

162.    Defendants' deceptive and unfair trade practices were conducted with the intent to induce others to rely upon such deceptive and unfair acts and act on them.

163.    Defendants' deceptive and unfair trade practices were conducted for the purpose of selling or disposing of personal property or services, including, without limitation, franchise services and products advertised, promoted, offered for sale, and sold in the Infringing Stores, on the Infringing Website and social media accounts, and related goods and services, or to induce the public to enter into obligations relating to such property or services.

164.     Defendants' conduct has misled the consuming public concerning the nature, characteristics, and quality of Defendants' goods and services, to the consuming public's detriment and the detriment of Condé Nast's legitimate business enterprise.

165.     Such deceptive and unfair acts offend public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

166.     Defendants' actions violate standards of unfairness and deception as set forth and interpreted by federal courts and/or violate 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and Fla. Stat. § 495.151, all of which proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

167.     By these actions, Defendants have engaged and continues to engage in unfair or deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* As a result, Condé Nast has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

168.     Condé Nast has suffered actual damages as a direct and proximate result of Defendants' wrongful, deceptive and unfair trade practices.

169.     Defendants' deceptive and unfair trade practices are causing and will continue to cause Condé Nast to suffer irreparable harm, for which Condé Nast has no adequate remedy at law.

170.     Condé Nast is entitled to injunctive relief and all other available statutory remedies, including, but not limited to, Condé Nast's damages; Defendants' profits; and attorney fees and costs pursuant to Fla. Stat. §§ 501.2105 and 501.211.

171.     Further, Condé Nast is entitled to injunctive relief against Defendants to stop the illegal conduct.

## COUNT VIII –
## FLORIDA UNFAIR COMPETITION

172.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 and Counts I to VII of this Complaint as if fully set forth herein.

173.    As alleged herein, Defendants have engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Florida common law.

174.    Defendants' actions, as described above, constitute unfair competition under the common law of the State of Florida, in that Defendants' actions constitute Federal Trademark Infringement under the Lanham Act, False Association, False Designation of Origin, and Unfair Competition and Passing Off under the Lanham Act, Dilution under the Lanham Act, Dilution under Florida statutory law, Florida common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling Condé Nast to all remedies available under Florida law for such unfair competition.

175.    Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by Condé Nast, or that there is an association, affiliation, or connection between Defendants and Condé Nast.

176.    Through Defendants' unauthorized use of the VOGUE Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

177.    Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is

likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Condé Nast, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Condé Nast.

178.    Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in their sales, customer base, and share in the online magazine and lifestyle blog industry.

179.    Defendants are liable to Condé Nast for unfair competition under Florida law, because Defendants' conduct is tortious and has deprived Condé Nast of customers and other prospects.

180.    Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Florida law. Defendants' acts of unfair competition have caused Condé Nast damages, and Condé Nast seeks judgment for Defendants' profits made by Defendants' unfair competition, for the damages sustained by Condé Nast, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

181.    Condé Nast further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Condé Nast's damages, whichever is greater, due to the nature of Defendants' conduct.

182.    Further, Condé Nast is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

### COUNT IX –

### FLORIDA CIVIL CONSPIRACY

183.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 and Counts I to VIII of this Complaint as if fully set forth herein.

184.    On information and belief, Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley conspired together to initiate and operate the Infringing Franchise and, with and through the Franchisee Defendants, sell goods and services bearing the Infringing Mark in the U.S.

185.    An agreement and conspiracy existed and continues to exist among Defendants and other co-conspirators, to unlawfully operate the Infringing Franchise and sell Infringing Products, in an effort to trade off the goodwill and reputation of Condé Nast's VOGUE Marks in violation of Condé Nast's rights.

186.    Defendants knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy, as alleged in paragraphs 1-98 above.

187.    Condé Nast has been damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

### COUNT X –

### CONTRIBUTORY TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE ASSOCIATION AND FALSE DESIGNATION, DILUTION, AND DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER THE LANHAM ACT AND FLORIDA STATUTORY AND COMMON LAW

(*against Zhejiang Xibin Import and Export Co., Ltd., Ximivogue USA Franchising, LLC, Alejandro Guerrero, Stephenia Lima, Shahpour Dalirian, and Yanet Barkley*)

188.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 98 and Counts I to VIII of this Complaint as if fully set forth herein.

189.     By misappropriating and using the Infringing Mark in connection with "fast fashion" franchise services, online and brick-and-mortar retail services, and branded apparel and goods, Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley knowingly aided and enabled at least the Franchisee Defendants—and, on information and belief, other former, current, or potential franchisees, sellers, or distributors of Defendants' goods and services—to commit acts of direct trademark infringement, unfair competition, false association and false designation, dilution, and deceptive and unfair trade practices as alleged in Counts I through IV above.

190.     On information and belief, Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley intentionally induced at least the Franchisee Defendants to infringe the VOGUE Marks by soliciting and contracting with the Franchisee Defendants to join the Infringing Franchise and sell the Infringing Products alleged herein.

191.     On information and belief, Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley continued to operate the Infringing Franchise and supply Infringing Products to at least the Franchisee Defendants with knowledge that those goods and services infringed the VOGUE Marks.

192.     On information and belief, Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley continued to operate the Infringing Franchise and supply Infringing Products to at least the Franchisee Defendants despite having reason to know that such goods and services infringed the VOGUE Marks.

193.     Defendants' unlawful, unauthorized, and unlicensed operation of the Infringing Franchise and sales of goods and services bearing the Infringing Mark have thus contributed to the creation of express and implied representations that Defendants' Infringing Franchise and

Infringing Products are sponsored, authorized, or approved by, or otherwise affiliated with Condé Nast.

194.    Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley's acts alleged herein constitute contributory trademark infringement, unfair competition, false association and false designation, dilution, and deceptive and unfair trade practices under the Lanham Act and Florida law, entitling Condé Nast to damages sustained by Condé Nast, treble its damages, Defendants' profits made from their infringing use of the VOGUE Marks, and all costs necessary to remediate the violative acts and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117 and Florida law.

195.    Master Franchisor Defendant, U.S. Franchisor Defendant, Guerrero, Lima, Dalirian, and Barkley are thus contributorily liable for Defendants' intentional, deliberate, and willful use of the VOGUE Marks and colorable imitations thereof with knowledge of Condé Nast's rights in the VOGUE Marks, and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

196.    Condé Nast further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Condé Nast's damages, whichever is greater, due to the nature of Defendants' conduct.

197.    Further, Condé Nast is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Condé Nast respectfully demands a jury trial, and prays for the following relief against Defendants:

A.      That the Court enter a judgment in favor of Condé Nast and against Defendants as to all causes of action alleged herein.

B.      That Defendants and their officers, directors, agents, servants, employees, and all persons in active concert and participation with them, be preliminarily and permanently enjoined from directly or indirectly using Condé Nast's VOGUE Marks, or any other mark, word, designation, name, or domain name that is similar to Condé Nast's VOGUE Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner that is likely to cause confusion or mistake or to deceive.

C.      That Defendants be ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in Defendants' possession or control that bear Condé Nast's VOGUE Marks, or any other mark, word, designation, name, or domain name that is confusingly similar to Condé Nast's VOGUE Marks, and that Defendants be ordered to deliver up for destruction all plates, molds, matrices, masters, and other means of producing or applying the prohibited marks.

D.      That Defendants be ordered to file with the Court and serve on Condé Nast, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

E.      That Defendants be required to pay and account to Condé Nast for any and all benefits or profits derived by Defendants from the use of Condé Nast's VOGUE Marks and any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to the VOGUE Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by Condé Nast by reason of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Florida statutory and common law.

F.      That in accordance with the Lanham Act and Florida statutory and common law, Condé Nast be awarded punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or Condé Nast's damages, whichever is greater, increased subject to the principles of equity, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of their actions.

G.      That the costs of this action be awarded to Condé Nast.

H.      That Condé Nast be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct.

I.      That Defendants be liable for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees.

J.      That pre-judgment and post-judgment interest be awarded to Condé Nast.

K.      That Condé Nast have such other and further relief, including without limitation equitable relief, as the Court deems just and proper.

Dated:  September 14, 2021

Respectfully submitted,

ADAMS AND REESE LLP

*/s/ Eric J. Partlow*
Eric J. Partlow
Trial Counsel
Florida Bar No. 556531
eric.partlow@arlaw.com
101 E. Kennedy Blvd., Suite 4000
Tampa, Florida 33602
(813) 402-2880 (Telephone)
(813) 402-2887 (Facsimile)

Maia T. Woodhouse
Tennessee BPR No. 030438
(*motion for pro hac vice admission forthcoming*)
maia.woodhouse@arlaw.com
Fifth Third Center
424 Church Street, Suite 2700
Nashville, Tennessee 37219
(615) 259-1450 (Telephone)
(615) 259-1470 (Facsimile)

Caitlin H. Smith
Georgia Bar No. 500005
(*motion for pro hac vice admission forthcoming*)
caitlin.smith@arlaw.com
Monarch Tower
3424 Peachtree Road NE, Suite 1600
Atlanta, Georgia 30326
(470) 427-3700 (Telephone)

***Attorneys for Plaintiff***