**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case Number: 21-23322-CIV-MORENO**

ADVANCE MAGAZINE PUBLISHERS INC.,
d/b/a CONDÉ NAST,

                Plaintiff,

v.

ZHEJIANG XIBIN IMPORT AND EXPORT
CO., LTD., XIMIVOGUE USA
FRANCHISING, LLC, XIMI VOGUE
FLORIDA, LLC, XIMIVOGUE BAL
HARBOUR LLC, XIMIVOGUE BAYSIDE
LLC, XIMIVOGUE PEMBROKE LLC,
XIMIVOGUE WESTLAND LLC, XIMI
VOGUE PLAZA DEL SOL, LLC,
XIMIVOGUE LLC, ALEJANDRO
GUERRERO, STEPHENIA LIMA,
SHAHPOUR DALIRIAN, YANET
BARKLEY, XIMI VOGUE FLORIDA
BROWARD LLC, XIMI FLORIDA 001 LLC,
XIMI FLORIDA 002 LLC, XIMI FLORIDA
003 LLC, XIMI FLORIDA 004 LLC, XIMI
FLORIDA 005 LLC, XIMI VOGUE, INC.,
XIMI CALIFORNIA 001 LLC, KKCUTE INC.
(FORMERLY d/b/a XIMIVOGUE CHICAGO
INC.), and XIMIVOGUE NORTH
CAROLINA, LLC,

                Defendants.

_____/

**MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**
**AND MEMORANDUM OF LAW IN SUPPORT**

    Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast ("Condé Nast" or

"Plaintiff"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, respectfully moves

for entry of Final Default Judgment against Defendant KKCute, Inc. (formerly d/b/a Ximivogue

Chicago Inc.) ("Defendant" or "KKCute"), and awarding permanent injunctive relief. In support, Condé Nast states as follows:

**Procedural Posture**

1.      Condé Nast filed its complaint on September 14, 2021, alleging causes of action for trademark infringement, unfair competition, false association and false designation of origin, and dilution under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*. ("Lanham Act"), and related state causes of action based on KKCute's use of "VOGUE" in connection with its "fast fashion," online and brick-and-mortar retail services, VOGUE-branded apparel and accessories, and jewelry, shoes, beauty and skincare products, paper goods, home goods, consumer goods, and related goods and services, in violation of Condé Nast's established rights in its federally registered marks and common law marks for related goods and services. [Doc. 1].

2.      Condé Nast served the Complaint and Summons on KKCute through its manager on October 15, 2021. [Doc. 13]. KKCute failed to serve an answer or otherwise respond to the complaint as required by Rule 12(a), and the Clerk of Court entered a default against KKCute on December 10, 2021. [Doc. 24].

3.      Accordingly, all allegations against KKCute are deemed admitted and the relief sought by Condé Nast may be granted. *See Advance Magazine Publishers, Inc. v. Gentlemen's Quarters of Kissimmee, Inc.*, Case No. 6:19-cv-2261-Orl-WWB-DCI, 2020 WL 3250233, at *5 (M.D. Fla. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 3250187, at *1 (M.D.Fla. Mar. 20, 2020) ("through the default, Defendant admits that it continues to use its infringing marks and it adopted the marks intending to trade on Plaintiff's goodwill and lead customers to believe its products and services are associated with Plaintiff, and the admitted allegations are likely to cause consumer confusion."); *Eagle Hosp. Physicians, LLC v. SRG*

2

*Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (in defaulting, defendant admits the plaintiff's well-pleaded allegations of fact).

4.      This Court has jurisdiction over KKCute and over the subject matter at issue in this action. KKCute is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 5 Woodfield Mall #D307, Schaumburg, Illinois 60173, which is alleged to have, and is deemed to admit having, among other things, committed a tortious act in Florida, caused damages in Florida, and entered into a contract in Florida through which it committed and caused the tortious acts and damages. [Doc. 1].

**Admitted and/or Established Facts**

5.      Condé Nast is the owner of common law and registered trademark rights in and to the marks VOGUE, VOGUE.COM, VOGUE RUNWAY, and the stylized marks $\text{VOGUE}$ (collectively, the "VOGUE Mark") in the U.S. and throughout the world.

6.      Condé Nast has continuously used the VOGUE Mark in connection with its magazine *Vogue* (the "Vogue Magazine") since at least as early as 1892.  The Vogue Magazine is one of the nation's premier fashion and beauty magazines.  Condé Nast also uses the VOGUE Mark in connection with its corresponding website, vogue.com (the "Vogue Website").  The Vogue Magazine and Vogue Website both cover the subject matter of fashion, beauty, culture, living, and runway.  Since launching the Vogue Website, Condé Nast prominently advertised and has continually used the VOGUE Mark in providing information about fashion and beauty via the Internet.

7.      In its Vogue Magazine and Vogue Website, and through its sponsored events throughout the U.S., Condé Nast promotes the goods and services provided directly by Condé Nast and by others using its VOGUE Mark.  By way of example, Condé Nast offers a "Vogue

3

Shop" on the Vogue Website, through which consumers may purchase VOGUE-branded apparel, books, art prints, notecards, paper goods, mugs, flowers, surfboards, bicycles, jigsaw puzzles, and other goods.

8.      As a result of Condé Nast's longstanding and continuous use of the VOGUE Mark, the VOGUE Mark has acquired substantial goodwill.

9.      Since its first use of the mark, Condé Nast has spent significant resources advertising, developing, and promoting the VOGUE Mark.  The VOGUE Mark has become synonymous with the high fashion and haute couture products, apparel, clothing, and services that are contained within the editorial pages and advertisements published in the Vogue Magazine and on the Vogue Website and otherwise promoted online, through events, contests, licensed merchandise, and gatherings.  As a result, millions of consumers in the U.S. (including consumers in the state of Florida) and worldwide instantly associate high fashion, beauty, and luxury products, fashion, apparel, and accessories with Condé Nast's distinctive and famous VOGUE Mark.

10.      The VOGUE Mark has become well known in Florida, throughout the U.S., and abroad, as a symbol of Condé Nast's goods and services.  Thus, Condé Nast has established, through continuous, long-term use in commerce extensive common law trademark rights in the VOGUE Mark

11.      In addition to the common law rights in its Vogue Mark, Condé Nast owns a number of federal trademark registrations for its Vogue Mark in connection with its goods and services, including Registration Nos. 0504006, 0125542, 1336659, 3069976, 2592452, 4138408, 4964884, 5465148, 4964883, 2701928, 5655921, 5413137, 5398198, 5428664, 5645061,

1659761, 5915018, 5069495, 5686488, 5454848, 6131876, 6289836, 6034637, 6173612, 6181442, 6248343, 6324126, 6315601, and 6472359 (the "Registered VOGUE Marks").

12.    By failing to plead, Defendant admits the validity of and Condé Nast's ownership of the foregoing federally-registered, applied-for, and common law marks (hereinafter referred to collectively as the "VOGUE Marks.")

13.    Condé Nast has continuously used the VOGUE Marks in the United States as an identifier of Condé Nast as the source and origin of high quality printed and online publications, lifestyle products, apparel, clothing, and services. Condé Nast has expended considerable time, resources, and effort in promoting the VOGUE Marks and developing substantial goodwill associated therewith throughout the United States. The VOGUE Marks are inherently distinctive when used in conjunction with Condé Nast's goods and services.

14.    Due to the continual use of the VOGUE Marks by Condé Nast, the VOGUE Marks have come to indicate a single source of goods and services. The VOGUE Marks further have come to indicate Condé Nast as the single source of such quality goods and services. As a result of the long and exclusive use by Condé Nast of its VOGUE Marks, the significant volume of sales under the VOGUE Marks, and the large amount of money spent or foregone for advertising and promotion of its goods and services, the VOGUE Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of Condé Nast, its quality goods and services, and its goodwill. Condé Nast and its use of the VOGUE Marks are well-known and famous.

15.    Defendant commenced to use, and is currently using, in interstate commerce and commerce affecting interstate commerce, the term "VOGUE" (the "Infringing Mark") in connection with its "fast fashion," online and brick-and-mortar retail services, VOGUE-branded

apparel and accessories, and jewelry, shoes, beauty and skincare products, paper goods, home goods, consumer goods, and related goods and services, in violation of Condé Nast's established rights in its federally registered marks and common law marks for related goods and services.

16.     Defendant selected the Infringing Mark solely because of the fame and reputation built up in the mark by Condé Nast over many years and at great expense, and Defendant's sole intention in selecting the mark was to trade on the goodwill of Condé Nast.

17.     Defendant uses the term "VOGUE" and the Infringing Mark in connection with marketing and providing its goods and services to citizens of Florida and other states, and advertises its goods and services to citizens of Florida and other states via the Internet.

18.     Defendant's Infringing VOGUE Mark is identical to the VOGUE Mark.

19.     Defendant's activities have a substantial effect upon Condé Nast's interstate usage of its mark, good will, and sales.  The continued, unauthorized use of "VOGUE" by Defendant would subject the good will and reputation of Condé Nast to the hazards of Defendant's business.

20.     Defendant is using Condé Nast's VOGUE Marks without Condé Nast's authorization.

21.     Defendant's use of the Infringing Mark is specifically designed to create an association or suggestion of affiliation between Defendant and Condé Nast.

22.     Through its use of the Infringing Marks, including but not limited to, online, on apparel, on storefronts, and its social media accounts, Defendant seeks to unfairly trade off the valuable goodwill and reputation built Condé Nast in its VOGUE Marks.

23.     Defendant is using "VOGUE" in U.S. commerce in connection with apparel, brick-and-mortar and online retail services, model and influencer agency services, and related

products and services.  These services are the same or closely related to the goods and services being offered by Condé Nast under its pre-existing VOGUE Marks.

24.     At a minimum, Defendant's target customers overlap with Condé Nast's target customers—men and women seeking fashionable clothing and lifestyle content and products.  As such, Condé Nast and Defendant compete for a common pool of customers.

25.     Defendant's services are overlapping and/or closely related to Condé Nast's goods and services rendered under its VOGUE Marks.

26.     Defendant's use of the Infringing Mark so resembles Condé Nast's VOGUE Marks as to be likely, when used on or in connection with the services identified above, to cause confusion, or to cause mistake, or to deceive.

27.     Defendant's use of a nearly identical mark for services closely related to Condé Nast's goods and services offered under its VOGUE Marks is without authority or license from Condé Nast and creates a likelihood of confusion, deception, and mistake.

28.     Defendant's use of the Infringing Mark in interstate commerce to advertise, promote, and sell its goods and services, including through the Infringing Website, was never approved, permitted or endorsed by Condé Nast, and occurred after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the VOGUE Marks.

29.     Defendant's use of the Infringing Mark in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent, and began long after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the VOGUE Marks.

30.     Condé Nast's first use in commerce of the VOGUE Marks predates Defendant's first use of the Infringing Mark <u>by over 120 years</u> and, therefore, Condé Nast has priority over Defendant's first use of the Infringing Mark.

31.     Condé Nast's customers, Defendant's customers, and the general public are likely to be misled into believing that Defendant's products and services are provided, sponsored, or approved by Condé Nast.

32.     Defendant has infringed Condé Nast's VOGUE Marks by various acts, including, without limitation, the advertising, promotion, and provision of its products and services under the Infringing Mark and the other variations reflected herein.

33.     Because Defendant's use of the Infringing Mark in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent. Condé Nast does not control the quality (or lack thereof) of Defendant's goods and services.

34.     Due to Defendant's use of the Infringing Mark to advertise, promote, and sell goods and services of a lesser quality than Condé Nast's high quality printed and online publications, lifestyle products, apparel, clothing, and services, the public is likely to associate the lack of quality or lack of prestige in Defendant's goods and services with Condé Nast's goods and services.

35.     On July 10, 2020, Condé Nast sent Defendant letters demanding that it cease and desist from all use of the Infringing Mark, including all online use, signage, marketing, promotional, and other printed materials, as well as all social media sites promoting itself. Defendant has failed to comply with Condé Nast's demands. Therefore, Defendant's use of the Infringing Mark in connection with Defendant's online presence and services has been made notwithstanding Condé Nast's well-known and prior established rights in the VOGUE Marks and

with both actual and constructive notice of Condé Nast's Registered Marks under 15 U.S.C. § 1072.

36.     Defendant's continued use of the Infringing Mark constitutes malicious, willful, fraudulent and deliberate infringement.  In selecting and using a mark that includes the term "VOGUE" in connection with the sale and offering of its goods and services, notwithstanding its actual knowledge of Condé Nast's rights, Defendant has acted and continues to act with wanton disregard for Condé Nast's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which Condé Nast has established in the VOGUE Marks.

37.     Defendant's actions have caused and continue to cause Defendant's services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Condé Nast, the Vogue Magazine, and/or the Vogue Website.

38.     The Infringing Mark utilized by Defendant is a colorable imitation of and confusingly similar to the VOGUE Marks.  Defendant's activities are wrongful and illegal, and likely to cause confusion, mistake, and deception among consumers and others as to the source, nature, and quality of the goods and services offered by Defendant, or the existence of sponsorship, or approval of the goods and services offered by Defendant with or by Condé Nast.

39.     Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Condé Nast's business, reputation, and good will of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.  Condé Nast has no adequate remedy at law.

**Trademark Infringement under Lanham Act and Common Law**

40.     Defendant's use of Condé Nast's Registered VOGUE Marks and colorable imitations thereof in connection with its online presence, advertising and promotion of services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41.     Defendant's use of the Registered VOGUE Marks and colorable imitations thereof constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Condé Nast to an injunction, damages sustained by Condé Nast, treble its damages, Defendant's profits made from its infringing use of the VOGUE Marks, and all costs necessary to remediate the infringing uses and their effects, increased subject to the principles of equity, pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

42.     Defendant's intentional, deliberate, and willful use of the VOGUE Marks and colorable imitations thereof with knowledge of Condé Nast's rights in the Registered VOGUE Marks constitutes a willful violation of 15 U.S.C. § 1114(1) and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendant's actions pursuant to 15 U.S.C. § 1117.

43.     The use by Defendant of the Infringing Mark and marks incorporating VOGUE to identify its goods and services, as described above, also constitutes infringement of Condé Nast's rights in its marks pursuant to the common law of the State of Florida, for which infringement Condé Nast is entitled to all remedies available to it under the common law of the State of Florida.

10

**Unfair Competition under Lanham Act and Common Law**

44.     Defendant's use of the Infringing Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Condé Nast, and as to the origin, sponsorship or approval of Defendant's services by Condé Nast. Additionally, the public is likely to believe that Defendant's services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with Condé Nast, all to Condé Nast's irreparable harm and in violation of 15 U.S.C. § 1125(a).

45.     Defendant has used names and marks which are confusingly similar to Condé Nast's VOGUE Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendant are made by, approved by, sponsored by, or affiliated with Condé Nast.

46.     Defendant's actions are likely to cause consumers to believe that Defendant's services originate from the same source as, or are sponsored or approved by Condé Nast, or that there is an association, affiliation, or connection between Defendant and Condé Nast.

47.     Defendant's acts as alleged herein were committed with the intent to pass off Defendant's goods and services as the goods and services of, approved by, sponsored by, or affiliated with Condé Nast, and with the intent to deceive and defraud the public.

48.     Defendant has engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Florida common law.

49.     Defendant's actions, as described above, constitute unfair competition under the common law of the State of Florida, in that Defendant's actions constitute Federal Trademark Infringement under the Lanham Act, False Association, False Designation of Origin, and Unfair

11

Competition and Passing Off under the Lanham Act, Dilution under the Lanham Act, Dilution under Florida statutory law, Florida common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling Condé Nast to all remedies available under Florida law for such unfair competition.

50.     Defendant has used in connection with its goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant with Condé Nast, and to deceive as to the source, sponsorship, approval, or certification of Defendant's goods or services by Condé Nast.

51.     Defendant's acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in their sales, customer base, and share in the online magazine and lifestyle blog industry.

52.     Defendant is liable to Condé Nast for unfair competition under Florida law, because Defendant's conduct is tortious and has deprived Condé Nast of customers and other prospects.

53.     Defendant is knowingly infringing the VOGUE Marks in violation of the common law trademark rights of Condé Nast.

54.     Defendant's acts constitute unfair competition and passing off, and have caused Condé Nast damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Condé Nast's goodwill and reputation caused by Defendant.

55.     The use by Defendant of the Infringing Marks as described above, is likely to cause confusion as to the source of Defendant's services and constitutes unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and common law, entitling Condé Nast to an

injunction, damages sustained by Condé Nast, treble its damages, Defendant's profits made from their infringing use of the VOGUE Marks, and all costs necessary to remediate the unfair competition and passing off and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117 and common law.

56.     Defendant's intentional, deliberate, and willful use of the Infringing Mark with knowledge of Condé Nast's common law trademark rights in the VOGUE Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendant's actions pursuant to 15 U.S.C. § 1117.

57.     Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

**False Association and False Designation of Origin under Lanham Act**

58.     Defendant has caused products and services to enter interstate commerce with the designation and mark "VOGUE" connected therewith.

59.     Defendant's use of said designation and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant with Condé Nast and as to the origin, sponsorship, or approval of such goods and services by Condé Nast.

60.     Defendant's acts are in violation of 15 U.S.C. § 1125 in that Defendant has used in connection with its goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant

with Condé Nast and as to the origin, sponsorship, and approval of Defendant's goods, services, and commercial activities.

61.     Defendant's acts constitute false association and false designation of origin, and have caused Condé Nast damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Condé Nast's goodwill and reputation caused by Defendant.

62.     The use by Defendant of the Infringing Mark as described above, is likely to cause confusion as to the source of Defendant's services and constitutes false association and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Condé Nast to an injunction, damages sustained by Condé Nast, treble its damages, Defendant's profits made from their infringing use of the VOGUE Marks, and all costs necessary to remediate the false association and designation of origin and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

63.     Defendant's intentional, deliberate, and willful use of the Infringing Marks with knowledge of Condé Nast's common law trademark rights in the VOGUE Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendant's actions pursuant to 15 U.S.C. § 1117.

64.     Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

### Dilution under Lanham Act and Fla. Stat. § 495.151

65.     The VOGUE Marks are distinctive and famous marks within the meaning of 15 U.S.C. § 1125(c) and Fla. Stat. § 495.151 by virtue of their inherent and acquired distinctiveness;

14

the long duration and wide extent of the VOGUE Marks' use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the VOGUE Marks; the large volume and wide geographic extent of sales of goods and services offered under the VOGUE Marks; the high degree of actual recognition of the VOGUE Marks; and the longstanding federal registrations of the VOGUE Marks.

66.     Condé Nast has used its VOGUE Marks extensively throughout this State and this District for over 126 years.

67.     Defendant's use of Condé Nast's VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has been used in commerce for Defendant's commercial gain.

68.     Defendant has engaged in dilution by blurring because Defendant's use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendant's Infringing Mark and Condé Nast's VOGUE Marks that impairs the actual or acquired distinctiveness of Condé Nast's VOGUE Marks.

69.     Defendant has engaged in dilution by tarnishment because Defendant's use of the VOGUE Marks, or variants thereof similar to or likely to cause confusion with the VOGUE Marks, has already caused or is likely to cause an association arising from the similarity between Defendant's infringing use and Condé Nast's VOGUE Marks that harms the reputation and goodwill associated with Condé Nast's VOGUE Marks.

70.     Defendant only recently adopted "VOGUE," well after the VOGUE Marks became famous.

71.     The Infringing Mark used by Defendant as illustrated above is identical to the VOGUE Marks.

72.     Defendant uses the Infringing Mark in commerce.  Such use is commercial in nature.

73.     Defendant's use of VOGUE in connection with its online presence and associated services has caused, or is likely to cause, dilution of Condé Nast's VOGUE Marks.  It is likely that the ordinary consuming public of the U.S. will make an association arising from the similarity of the marks that impairs the distinctiveness of the VOGUE Marks.

74.     Defendant's use of the VOGUE Marks constitutes dilution under 15 U.S.C. § 1125(c) and Fla. Stat. §§ 495.151 and 495.141, and Condé Nast is entitled to an injunction prohibiting such further use.

75.     Defendant's acts have caused Condé Nast damages, and Condé Nast is entitled to judgment pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 495.151 for Defendant's profits made by Defendant through its unlawful acts, for the damages sustained by Condé Nast, and for all costs necessary to remediate the unlawful acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117.

76.     Defendant willfully intended to trade on the recognition of Condé Nast's famous marks, entitling Condé Nast to treble its damages and Defendant's profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117 and Fla. Stat. §§ 495.151(2) and 495.141.

77.     Defendant's willful conduct renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendant's actions pursuant to 15 U.S.C. § 1117.

78.     Pursuant to 15 U.S.C. § 1118 and Fla. Stat. §§ 495.151(2) and 495.141(1), Condé Nast is entitled to impoundment and destruction of infringing articles.

## MEMORANDUM OF LAW

**A.     Condé Nast is entitled to Permanent Injunctive Relief**

79.     Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Ferrara Candy Co. v. Exhale Vapor LLC*, 2:17-CV-512-FtM-38MRM, 2018 WL 6261504, at *5 (M.D. Fla. July 30, 2018).

80.     Permanent injunctive relief is appropriate here. As a preliminary matter, Condé Nast need not show irreparable harm, as the default against Defendant establishes irreparable harm and satisfies the element of success on the merits. *See Backjoy Orthotics, LLC v. Forvic Intl. Inc.*, 614CV249ORL41TBS, 2016 WL 7664289, at *6 (M.D. Fla. Aug. 23, 2016), *report and recommendation adopted*, 2017 WL 770588 (M.D. Fla. Feb. 28, 2017) (finding that courts "regularly issue injunctions as part of default judgments"); *Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, 2017 WL 1987247, at *5 (M.D. Fla. Feb. 21, 2017) (noting that a plaintiff moving for a permanent injunction in a final default judgment "need not show irreparable harm, as the default against Defendants satisfies the element of success on the merits").

81.     Indeed, "[i]njunctive relief is appropriate in infringement cases because there is no adequate remedy at law to redress the infringement and infringement by its nature causes irreparable harm." *TracFone Wireless, Inc. v. Washington*, 613CV1030ORL36TBS, 2014 WL

12613316, at *5 (M.D. Fla. May 19, 2014), *report and recommendation adopted*, 2014 WL 12616949 (M.D. Fla. July 8, 2014); *Coach, Inc. v. Just A Boun, LLC*, 2011 WL 6318966, at *4 (M.D. Fla. Nov. 8, 2011). Courts within the Eleventh Circuit have traditionally held that, in trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." *Ferrara Candy Co.*, 2018 WL 6261504, at *5 (quoting *McDonald's Corp. v. Robertson*, 147 F. 3d 1301, 1306 (11th Cir. 1998)); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales." (alteration added)).

82.     Here, Condé Nast has properly pled (and Defendant is deemed to have admitted) that Defendant's use of the Infringing Mark is without Condé Nast's consent, and that such unauthorized use is likely to cause (to the extent it has not already) confusion, mistake, and deception among customers and consumers. Compl. ¶¶ 31-85. Condé Nast has further pled that Defendant's use of the Infringing Marks seeks to improperly benefit from the favorable reputation and valuable goodwill Plaintiff has established in its VOGUE Marks, and that "Plaintiff and its goodwill and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages." *Id.* ¶ 98. Defendant, "through the default, [has] admitted all allegations of irreparable injury contained in Plaintiff's complaint. *TracFone Wireless*, 2014 WL 12613316, at *5. Thus, the first element required for permanent injunction has been met.

83.     Second, Condé Nast has no adequate remedy at law so long as Defendant continues to use the Infringing Marks because Condé Nast cannot control the quality of what

appears to be its products in the marketplace. "An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result" if Defendant's infringing actions are allowed to continue. *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016). Moreover, "[u]nder established case law, therefore, [Condé Nast's] uncontroverted allegations establish the first two prongs required for injunctive relief: it has suffered irreparable harm, and this harm cannot be remedied solely by money damages, or other traditional remedies at law." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1287 (S.D. Fla. 2010).

84. Third, the balance of harms weighs in favor of a permanent injunction. Condé Nast "faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act." *Chanel, Inc.*, 240 F. Supp. 2d at 1290-91. Thus, the permanent injunction "will merely enjoin [Defendant] from conducting a business which is already prohibited by state and federal law." *TracFone Wireless, Inc. v. Hernandez* ("*Hernandez*"), 196 F. Supp. 3d 1289, 1302 (S.D. Fla. 2016). Thus, "the potential harm to the plaintiff through loss of goodwill outweigh[s] any conceivable harm to the defendant." *Tiramisu Int'l*, 741 F. Supp. 2d at 1288.

85. Finally, the public interest supports issuance of a permanent injunction against Defendant to prevent consumers from being misled by Defendant's products. *Ferrara Candy Co.*, 2018 WL 6261504, at *5; *Nike, Inc. v. Leslie*, No. 85–960 Civ–T–15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.")). "[T]rademark infringement encroaches on the right of the public to be free of confusion as well as the synonymous right of the trademark owner to control his products' reputation." *Hernandez*, 196 F. Supp. 3d at 1302.

Here, the public interest would be served by the issuance of a permanent injunction, which prevents further consumer confusion.

86.     The Court's broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendant's infringing activities.  *See Nicopure Labs, LLC v. Doe,* 8:19-CV-1354-33AAS, 2019 WL 7423535, at *4 (M.D. Fla. Aug. 20, 2019), *report and recommendation adopted sub nom.*, 2019 WL 7423528 (M.D. Fla. Sept. 9, 2019).

87.     Condé Nast requests that the Court enter a permanent injunction, directing that Defendant and its officers, directors, agents, servants, employees, and all persons in active concert and participation with them, are required to immediately cease any use and are permanently enjoined from directly or indirectly using Condé Nast's VOGUE Marks, or any other mark, word, designation, name, or domain name that is similar to Condé Nast's VOGUE Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner that is likely to cause confusion or mistake or to deceive.

**B.     Condé Nast Forgoes its Right to Recover Actual Damages**

88.     Condé Nast forgoes its right to recover actual damages and attorneys' fees as part of the final judgment requested herein.  However, Condé Nast is preserving its right to seek the recovery of taxable costs in this matter should the final judgment be entered in its favor and/or revive its right to damages to the extent Defendant violates the injunction or otherwise continues its infringement.

WHEREFORE, Condé Nast requests the entry of a final judgment against Defendant awarding permanent injunctive relief as follows:

a.      That Defendant and its officers, directors, agents, servants, employees, and all persons in active concert and participation with them, are required to immediately cease any use and are permanently enjoined from directly or indirectly using Condé Nast's VOGUE Marks, or any other mark, word, designation, name, or domain name that is similar to Condé Nast's VOGUE Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner in connection with business, products, or services within the United States; or in any other manner that is likely to cause confusion or mistake or to deceive.

b.      That Defendant is ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in Defendant's possession or control that bear Condé Nast's VOGUE Marks, or any other mark, word, designation, name, or domain name that is confusingly similar to Condé Nast's VOGUE Marks, and that Defendant be ordered to deliver up for destruction all plates, molds, matrices, masters, and other means of producing or applying the prohibited marks.

c.      The Court shall retain jurisdiction over the parties for the purpose of any proceeding to enforce this Consent Final Judgment and Permanent Injunction.

d.      This Consent Final Judgment and Permanent Injunction is a final judgment and suitable for entry by the Clerk.

Date: February 17, 2022                          Respectfully submitted,

                                                **ADAMS AND REESE LLP**

                                                /s/ Michael A. Kolcun
                                                _____

                                                Eric J. Partlow
                                                Trial Counsel
                                                Florida Bar No. 556531

                                                Michael A. Kolcun
                                                Fla. Bar No. 86043

                                                100 North Tampa Street, Suite 4000
                                                Tampa, FL  33602
                                                (813) 402-2880 (Telephone)
                                                (813) 402-2887 (Facsimile)
                                                *Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on February 17, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

                                                /s/ Michael A. Kolcun
                                                _____
                                                Michael A. Kolcun
                                                *Attorneys for Plaintiff*